Estate of Albert W. Morse, Deceased, Erwin Bruce Hallett, Executor, and Claribel K. Morse v. Commissioner. Claribel K. Morse v. Commissioner.
Estate of Morse v. Commissioner
Docket Nos. 62902, 62903.
United States Tax Court
T.C. Memo 1958-51; 1958 Tax Ct. Memo LEXIS 181; 17 T.C.M. (CCH) 261; T.C.M. (RIA) 58051; March 31, 1958
*181 Payments made by a corporation to the widow of its deceased president, held, on the facts, to be a gift excludable from gross income, rather than compensation paid for past services rendered by the deceased president. Erwin Bruce Hallett, Esq., 120 Broadway, New York, N. Y., and William E. Bardusch, Jr., Esq., for the petitioners. Anthony S. Del Giudice, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in petitioner's income tax as follows: Docket No.
Year
Deficiency
62902
1950
$3,720.08
62903
1951
5,383.37
62903
1952
1,965.13 There are two issues for our decision: (1) whether certain amounts paid to petitioner Claribel K. Morse by a corporation which had employed *182 her deceased husband and of which he was an officer, subsequent to his death, were gifts to her or represented compensation for past services rendered to the corporation by her deceased husband; and (2) whether the Commissioner is barred by the statute of limitations from determining a deficiency against petitioners in Docket No. 62902 for the year 1950. It is stipulated that medical expenses deducted by petitioners on the tax returns for the taxable years are bona fide, but that the amount of the deductions shall be adjusted in accordance with the applicable Code limitations to the extent required as a result of any changes in petitioners' adjusted gross income resulting from this proceeding. Findings of Fact Some of the facts are stipulated. Those facts are found as stipulated and together with the pertinent exhibits are incorporated herein by reference. The petitioners in Docket No. 62902 are the Estate of Albert W. Morse, Deceased, Erwin Bruce Hallett, Executor, and Claribel K. Morse. Albert died on November 25, 1950. Claribel is his widow. Albert also left surviving his four minor children, one of whom required continual medical and institutional care and lived away from *183 home at a sanitarium in the middle west. Claribel filed a joint income tax return for the year 1950 with the collector of internal revenue for the first district of Brooklyn, New York. Claribel is the petitioner in Docket No. 62903. She resides at Forest Hills, Long Island, New York. She filed individual income tax returns for the years 1951 and 1952 with the collector of internal revenue for the first district of Brooklyn. The Anthony Company, hereinafter referred to as Anthony, is a New York corporation which was organized in 1910. It has a place of business in Long Island City, New York. Anthony is engaged in the business of designing and fabricating industrial oil burners and torches. On November 25, 1950, Anthony had outstanding 869 shares of 7 per cent preferred stock with a par value of $100 per share and it had outstanding 2,346 shares of common stock. At that date Claribel was the holder of record of 480 shares of the preferred stock and Albert was the holder of record of 10 shares of the preferred stock and 1,632 shares of the common stock. Albert entered the employ of Anthony in 1916 as vice president, and in January 1920 became president, and thereafter served as *184 such until his death. At all times from 1916 until his death, he was also a director of Anthony. Albert was a graduate of Cornell University with a degree in mechanical engineering. He rendered engineering services to Anthony, which included the invention of numerous patented devices which were used by Anthony and for which Albert never received any specific remuneration. Albert's endeavors were largely responsible for Anthony's being a profitable enterprise. Until 1937 Albert's annual compensation, as authorized by Anthony's board of directors, never exceeded $10,000. Albert was compensated at the rate of $10,000 per annum from 1937 through 1941. He was compensated at the rate of $15,000 per annum from 1942 until the time of his death. In addition, for each of the years 1945, 1946, 1947 and 1948, he received a $5,000 bonus and in 1949, he received a bonus of $2,500. During 1950, Albert received a total compensation of $14,213.82, consisting of 11 months salary ($13,750) and $463.82 withdrawals in excess of authorized salary. All such compensation and bonuses were voted by the board of directors. During the period 1921 through 1936 Albert cancelled a total of $38,443.71 of *185 the salaries authorized to him. Anthony's records disclose that subsequent to 1936, up to the time of his death, Albert was paid $20,043.71 of the cancelled salaries, leaving a balance outstanding of $17,400. On November 25, 1950, Anthony's vice president was Vincent Singer, its secretary was Erwin Bruce Hallett, and its treasurer was Walter M. Roberts. Following Albert's death no change was made in the officers and no additional officers were elected except as follows: At a meeting of the board of directors held on November 28, 1950, Daniel S. Morse and Claribel were elected an executive committee and Walter M. Roberts was elected executive vice president. At a meeting of the board of directors held on April 28, 1952, Claribel was elected president effective May 1, 1952. Anthony's board of directors from April 1949 through April 1952 comprised the following named persons: 1. Claribel K. Morse 2. Mabel Churchill 3. Daniel Morse 4. Erwin Bruce Hallett 5. Albert W. Morse (until his death, November 25, 1950) On December 7, 1950, a meeting was held by Anthony's board of directors. Claribel, Daniel Morse, Erwin Bruce Hallett, Mabel Churchill and Walter M. Roberts attended *186 the meeting. During the meeting Daniel Morse mentioned that Claribel was in a straitened financial condition. Hallett advised the other members of the board that it had been customary for the Government to recognize the payment of salary of a deceased executive to his widow and heirs as a tax-free gift; that there were certain limitations on that type of gift; and that in his opinion a gift up to 2 years salary would be recognized. He did not advise the board of the significance such payments might have to Anthony insofar as its tax returns were concerned. At the meeting there was no discussion regarding any unpaid back salary which might be due and owing Albert, any monies which might be due and owing Albert by reason of patents held or inventions made by him which had been turned over to Anthony, or compensating Albert more fully for services rendered. The following resolution was adopted by Anthony's board of directors at its meeting of December 7, 1950: "Whereas, in the sudden death on November 25, 1950, of Albert W. Morse, a member of the Board of Directors and the President of The Anthony Company continuously since 1920, there has been lost to the Company a man of keen *187 intellect, a builder of contructive force, and a leader and counselor of great wisdom; and "Whereas, the directors desire to record their deep sorrow at the death of Mr. Morse; and "Whereas, the directors desire to express their appreciation for the eminent services that Mr. Morse has rendered to the Company and to recognize in some tangible manner, the fact that the excellent standing of the company in the business world is in a large measure due to his exceptional abilities, "Now Therefore, be it "RESOLVED, that the Board of Directors of this corporation hereby gives formal expression of its grievous loss in the death of Albert W. Morse and does hereby note in its records the passing from this life of a man who was esteemed by his associates, loved by his friends, and respected by all. "FURTHER RESOLVED, that a copy of these resolutions be tendered to the family of Albert W. Morse as an inadequate and sincere expression of the Board's heartfelt sympathy in its bereavement. "FURTHER RESOLVED, that, in view of the long years of service of Mr. A. W. Morse, for many years President of this Company, the Board of Directors hereby authorizes and directs the payment of $10,463.82 *188 to Mrs. Claribel K. Morse, the widow of Albert W. Morse, of which sum $10,000.00 shall be paid in cash immediately and the balance of $463.82 by forgiveness of advances in salary heretofore made to Albert W. Morse, and, in addition, the Board of Directors hereby authorizes and directs the payment to Mrs. Claribel K. Morse as the widow of Mr. A. W. Morse, his salary of $1,250.00 per month for sixteen (16) months, said payments to commence in January, 1951, and to continue monthly thereafter until and including April, 1952, and "Whereas, this Board of Directors recognizes that the consideration extended to Mrs. Claribel K. Morse under the foregoing resolution constitutes an unusual and extraordinary expense concentrated in the month of December, which might, in the absence of specific action of the Board adversely affect the employees in the computation and payment of the bonuses under the plan heretofore authorized by this Board at its meeting held January 5, 1949, "Now, Therefore, be it "RESOLVED, that in computing bonuses for the current year, there shall be excluded as an expense all sums which become payable in accordance with the foregoing resolution." Anthony's board of *189 directors intended that the resolution result in a gift to Claribel. Claribel did not participate in the meeting of December 7, 1950, though she was present at it. Anthony, in accordance with the resolution of December 7, 1950, paid Claribel the following sums: 1950
$10,463.82
1951
15,000.00
1952
5,000.00
On December 29, 1950, an entry was made in Anthony's cash book which stated "$10,000 gift to President's widow" and opposite that entry there was stated "charge to general expense". All payments made to Claribel by Anthony under the resolution of December 7, 1950, were charged on its books of account to "miscellaneous expenses" and were included in "other deductions" on its income tax returns for the years 1950, 1951 and 1952. None of the payments made to Claribel were charged to salary accounts, nor was there any income tax withheld therefrom and none of the payments were reported for Federal Insurance Contribution Act purposes. Claribel rendered minor services for Anthony in 1950 and 1951, for which she received the sum of $2,650 per annum. Such services were limited to bookkeeping services, and she was compensated at that rate for such services until *190 May 1, 1952, at which time she became president, with a salary of $15,000 per annum. The payments made to Claribel pursuant to the resolution of December 7, 1950, were not compensation for services rendered by Claribel. Erwin Bruce Hallett, as executor of Albert's estate, filed a Federal estate tax return on February 25, 1952. The estate was valued under the option as of November 25, 1951. The adjusted net estate reported was $135,407.33. As a result of conferences between Hallett's law firm and representatives of the Internal Revenue Service, the shares of Anthony stock included in Albert's gross estate were revalued, resulting in an agreed adjusted gross estate of $170,998.86 with a deficiency in estate tax due in the amount of $1,995. Claribel was the sole legatee under Albert's last will and testament. She was also the beneficiary of life insurance carried on her late husband in the face amount of approximately $35,000 plus accrued dividends. She received about $40,000 on those policies. Anthony was the beneficiary of a $100,000 policy carried on the life of Albert. Anthony's tax return for 1950 was examined by a revenue agent during 1952. The agent allowed Anthony a deduction *191 of $1,250 for payment to Claribel in appreciation of Albert's past services. He disallowed the remainder of the $10,000 deduction claimed by Anthony as a miscellaneous expense on its 1950 tax return as a result of its payment to Claribel. Anthony elected to appeal the agent's adjustment to the Appellate Division of the Internal Revenue Service. Anthony submitted a protest to the agent's adjustment in which it claimed that the $10,000 payment to Claribel was paid in view of past services rendered by her deceased husband. Hallett executed a brief on behalf of Anthony which was attached to the protest. It stated that the issue is whether the amount paid in the year 1950 is reasonable compensation for past services rendered. The brief further stated that the payment was reasonable on three possible grounds: "(1) The deceased president was not adequately compensated for services rendered to Anthony in prior years and the payment to the widow in the year 1950 is consideration for such services. "(2) The $14,213.82 in salary paid to him, coupled with the $10,000 paid to Mrs. Morse, for a total of $24,213.82 are reasonable compensation in the year 1950 for services rendered to the corporation. *192 "(3) The amount paid to the widow over a period of sixteen months, namely $30,000, is a reasonable amount for past services rendered." Claribel, acting in her capacity as president of Anthony, signed the protest, acknowledging under oath that the facts related therein were true and correct. As a result of conferences with the Appellate Division, Anthony was allowed the deduction for $10,000 paid to Claribel, as a reasonable business expense for past services rendered to it by Albert. Claribel did not include in her gross income on the tax returns she filed for the years 1950, 1951 and 1952, or disclose thereon in any manner, the respective payments of $10,000, $15,000 and $5,000 received by her from Anthony those years pursuant to the resolution passed by its board of directors on December 7, 1950. The joint income tax return for 1950 filed by Claribel was examined by a revenue agent during 1952. Minor adjustments to claimed deductions for water taxes and entertainment expenses were made by the agent, which resulted in a deficiency of $164.10 for the year 1950. Claribel accepted those adjustments and paid the additional assessment on June 12, 1952. During 1955 and 1956 *193 a revenue agent examined the individual income tax returns filed by Claribel for the years 1951 and 1952. At that time he also re-examined the joint return filed by Claribel for the year 1950. On March 14, 1956, the Commissioner issued a statutory notice of deficiency to petitioners, increasing the gross income reported for 1950 by $10,000 which amount was paid to Claribel by Anthony and omitted from the joint return filed by her for that year. The payment was determined to be compensation for past services rendered to Anthony by Albert. On March 14, 1956, the Commissioner issued a second statutory notice of deficiency to Claribel, increasing the gross income reported for 1951 and 1952 by the respective amounts of $15,000 and $10,000 paid to Claribel by Anthony and omitted from the individual return filed by her for those years. The payments were determined to be compensation for past services rendered to Anthony by Albert. Anthony had never before made a payment of the equivalent of 2 years salary or any other similar payment to the widow of one of its deceased officers or employees. Anthony had no agreement with Albert to continue his salary after his death. The $30,000 *194 received by Claribel from Anthony during the years 1950, 1951 and 1952, was received by her as a gift from Anthony and not as additional compensation for past services rendered by Albert. Opinion The question for decision is whether the $30,000 which Anthony paid to Claribel during the years 1950, 1951 and 1952, was a gift to her or represented compensation for past services rendered by Albert. This is a question of fact, , and the controlling factor in determining the answer to that question is the intent of the payer in making the payments. . We have found as a fact, after considering all of the evidence, that the payments were gifts. The resolution of December 7, 1950, adopted by Anthony's board of directors, authorized and directed that the payments in question be made to Claribel "in view of the long years of service" of Albert. That the corporation formally expresses its motive for the payments to be in view of Albert's long years of service does not preclude them from being gifts since a gift is nonetheless a gift because inspired by gratitude for past faithful *195 services. See also . It is fundamental to the concept of a corporation that its affairs are controlled by its board of directors. 2 Fletcher, Cyclopedia Corporations, Ch. 11, § 505 (1954). We think therefore that the intent of the directors in passing the resolution is indicative of the intent of the corporation in making the payments. See . The three members of Anthony's board of directors who actively participated in the meeting of December 7, 1950, and adopted the resolution providing for the payments in question, testified at the trial. Their testimony was to the effect that Hallett advised the other members of the Board that it was possible for Anthony to make a tax-free gift to Claribel and that in voting to adopt the resolution they intended that the corporation make a gift to Claribel. They also testified that there was no discussion at the meeting in regard to more fully compensating Albert for his past services. Their testimony was corroborated by Walter Roberts and Claribel who were present during *196 the meeting but did not participate in the adoption of the resolution. Furthermore, the testimony of the directors indicates that they were under the impression that Claribel was in a straitened financial condition and that that factor entered into the passing of the resolution. Cf. . The Commissioner contends that the evidence shows that Anthony was obligated to make the additional payments to Claribel as compensation for the alleged inadequate compensation which Albert received during his lifetime. He also relies on the additional facts that the payments were deducted on the corporate returns as business expenses and that when a part of the amount deducted on the 1950 return was disallowed by a revenue agent, Anthony successfully protested the disallowance on the ground that the payment was reasonable compensation to Albert for past services and thus deductible. The Commissioner contends that the latter factors show that Anthony's intent in making the payments was to more fully compensate Albert for his services and was not to make a gift to Claribel. The record does not support the Commissioner's argument that Anthony *197 was obligated to make the additional payments to Claribel. It is true that Albert cancelled a part of his salary prior to 1936 for which he was never reimbursed and that he was never specifically compensated for his inventions which were used by Anthony. However there is nothing in the record to show that Anthony was legally bound to compensate Albert therefor. To the contrary, it appears that Albert's salary and bonuses were intended as full payment for any and all services rendered to Anthony. The manner in which Anthony treated the payments for tax purposes is of course inconsistent with the conclusion that it intended the payments to be gifts. Likewise the testimony of Anthony's directors is inconsistent with the conclusion that the payments were intended to be compensation for past services. We have weighed the conflicting evidence and upon a consideration of the record as a whole we have found that the payments were intended to be a gift to Claribel and not compensation for past services rendered by Albert. We also point out that here, as in the Hellstrom case, supra, the payments were made to the widow of the deceased officer and not to the deceased's estate. The statutory *198 notice of deficiency insofar as Docket No. 62902 and the year 1950 is concerned, was sent more than 3 years but less than 5 years after the joint tax return for that year was filed. Accordingly, the deficiency determined for 1950 is barred by the statute of limitations unless petitioners omitted more than 25 per cent of their gross income from their return for that year. The gross income allegedly omitted was the $10,000 paid to Claribel by Anthony. Since we held that payment was a gift to Claribel, it follows that there was no omission from gross income in that year and the deficiency determined for 1950 is barred by the statute of limitations. Decision will be entered for the petitioner in Docket No. 62902. Decision will be entered under Rule 50 in Docket No. 62903.